On appellant - cross-respondent's Petition to Reconsider filed September 13, 1999, petition to reconsider decision allowed; original opinion (162 Or App 309, 986 P2d 612 vacated; reversed and remanded in part on appeal and cross-appeal; otherwise affirmed July 12, 2000

Richard ALLEN,
James Anderson, John R. Atkins, David A. Baleria,
Jeanne Burrows, Kenneth R. Curtis, Steven E. Daniels,
Sandra Depiero, Sandra L. Eccker, Miltona L. Hendrix,
Michel Holloran-Marshall, Brad L. Hope,
Richard C. Kennedy, Robert O. Kennedy,
Susan M. Luttes, Ed Mayer, Ronald D. Parker,
Dewey P. Patten, Danny Lee Penland, David Roughton,
Jeannette M. Sieg, Tenley Tanhoff,
Edward C. Temple, Shirley A. Tolbert,
James L. Vansant, and James N. Warren,
*Respondents - Cross-Appellants,*

*v.*

COUNTY OF JACKSON,
*Appellant - Cross-Respondent.*

COUNTY OF JACKSON,
*Third-Party-Plaintiff-Appellant,*

*v.*

STATE OF OREGON,
*Third-Party-Defendant-Respondent.*
(97-0009-L-1; CA A102891)
7 P3d 739

Jacob Tanzer for the motion.

Gregory A. Hartman and Bennett, Hartman & Reynolds *contra*.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

Edmonds, P. J., concurring.

## ARMSTRONG, J.

Defendant Jackson County petitions for reconsideration of our opinion, *Allen v. County of Jackson*, 162 Or App 309, 986 P2d 612 (1999), in which we dismissed defendant's appeal and plaintiffs' cross-appeal for lack of a final judgment. We allow the petition to reconsider, vacate our original opinion and reverse on appeal and cross-appeal.

In November 1994, the voters of the State of Oregon enacted Measure 8, which amended the Oregon Constitution to require that public employees contribute six percent of their compensation to their retirement accounts. Measure 8 also prohibited public employers from paying their employees' contributions. In December 1994, defendant adopted an ordinance that provided that it would no longer pay plaintiffs' contributions and gave plaintiffs a 5.7 percent pay increase. In 1996, the Supreme Court declared Measure 8 unconstitutional as an impairment of contract in violation of Article I, section 10, of the United States Constitution (the Contracts Clause). *Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 918 P2d 765 (1996). Plaintiffs are Jackson County employees who seek to recover the amounts that defendant deducted from their wages for retirement contributions between December 7, 1994, and October 8, 1996.

In January 1997, plaintiffs filed the complaint in this case against defendant, stating three claims: (1) a claim under 42 USC § 1983 based on an impairment of contract theory under the Contracts Clause; (2) a claim for breach of contract; and (3) a statutory wage claim under ORS chapter 652. Plaintiffs moved for summary judgment on all of their claims. The common thread in the section 1983 and breach of contract claims is plaintiffs' argument that their performance of their employment duties constituted an acceptance of defendant's promise to pay their retirement benefit contributions so long as they worked for defendant.

Defendant thereafter moved (1) to dismiss the section 1983 claim pursuant to ORCP 21 A(8); (2) for summary judgment against five of the plaintiffs whose employment differed from the remaining plaintiffs on the breach of contract claim; (3) for partial summary judgment on its affirmative

defense of mitigation that would limit the remaining plaintiffs' damages to the difference between the six percent pension pick-up that did not occur and the 5.7 percent pay increase that they received; and (4) for summary judgment on plaintiffs' wage claim.

The trial court granted defendant's motion for summary judgment concerning the wage claim and denied defendant's remaining motions. The court also granted plaintiffs' motion for summary judgment on their section 1983 and breach of contract claims as to all plaintiffs. Defendant appeals from the grant of summary judgment on plaintiffs' motions, and plaintiffs cross-appeal from the grant of defendant's summary judgment motion on plaintiffs' wage claim.

In our original opinion, we reasoned:

"[T]he 'judgment' purports to award each plaintiff 'a judgment against defendant * * * for all amounts withheld from their regular salary for the purpose of making pension contributions from December 1994 to October 1996 plus statutory interest from the date of each withholding.' It purports to be a judgment for the payment of money. However, it does not comply with ORCP 70 because it does not adjudicate the amounts of the money judgments that plaintiffs seek." *Allen*, 162 Or App at 315 (ellipsis in original).

After we issued our opinion, defendant asked us to grant leave to the trial court to enter an amended judgment. We granted defendant's request and ordered the parties to submit memoranda on the effect of *Rauda v. Oregon Roses, Inc.*, 329 Or 265, 986 P2d 1157 (1999), on our jurisdiction over any amended judgment. After we issued our order, the trial court entered an amended judgment that recites that the court had previously granted plaintiffs' summary judgment motion as to liability and that, while "defendant does not accede to the correctness of the summary judgment or that any amount is owing to the plaintiffs, the parties have agreed on the calculations of the amounts owing to each plaintiff pursuant to the ruling of the court if a trial as to damages were conducted." The amended judgment also (1) awards each plaintiff a specific amount of damages under plaintiffs' breach of contract and section 1983 claims;[1] (2) dismisses plaintiffs' statutory

---

[1] The judgment awards identical damages under each claim. Plaintiffs do not seek a different measure of damages in their section 1983 claim.

wage claim; (3) dismisses all claims against the State of Oregon without prejudice;[2] and (4) awards plaintiffs costs and attorney fees under 42 USC § 1988.

## I.   THE APPEALABILITY OF THE AMENDED JUDGMENT

In *Rauda*, after the trial court denied the defendant's motion to dismiss, the parties stipulated to the entry of a judgment in favor of the plaintiffs and purported to reserve the defendant's right to appeal from it. We affirmed. *Rauda v. Oregon Roses, Inc.*, 147 Or App 106, 935 P2d 469 (1997). On review, the Supreme Court vacated our decision and dismissed the appeal for lack of jurisdiction. It noted that the parties stipulated to the judgment as a whole and "did not confine their stipulation, for example, to the fact or amount of plaintiffs' damages," *Rauda*, 329 Or at 269. It then concluded that a stipulated judgment is not appealable under ORS 19.245 (1997). At the core of the reasoning in *Rauda* is the proposition that parties cannot by agreement create a right to appeal from a stipulated judgment that is not otherwise appealable.

Here, unlike in *Rauda*, the parties did not stipulate to a judgment that is not otherwise appealable. Rather, the amended judgment recites that defendant contested the rulings in favor of plaintiffs on the liability issues and denied that any amount of damages was owed. All that defendants concede is that, assuming the correctness of the court's rulings that defendant contested, plaintiffs' evidence would result in a judgment in the amounts that the judgment actually awarded. Under these circumstances, we conclude that the amended judgment is not controlled by the holding in *Rauda* and is appealable. Rather than constituting a stipulated judgment from which the parties reserved the right to appeal, the judgment reflects that the parties litigated

---

[2] In its answer, defendant made a third-party complaint against the State of Oregon. Eventually, the complaint against the state was dismissed without prejudice based on a stipulation between defendant and the state. Although the state was named as a respondent in the Notice of Appeal, the Amended Notice of Appeal and the Notice of Cross-Appeal, the state did not file a brief or appear, nor do the parties raise any issues relating to claims against it.

contested issues, on which the court made rulings regarding liability and damages, and that any stipulation was limited to certain facts, not to the judgment as a whole.

## II.   DEFENDANT'S APPEAL

In its brief, defendant provides a summary of undisputed facts that were before the trial court in its consideration of the summary judgment motions. That summary states:

"In the general election of 1994, the voters of the state enacted Measure 8 which amended the state constitution to require that public employees contribute 6% of their compensation to their retirement accounts and to prohibit employers from picking up their employees' retirement contributions.

"On December 7, 1994, after Measure 8 had been approved by the voters but was not yet effective, [defendant] gave all of its employees a raise and began deducting their 6% pension contributions from their pay. The raise for represented employees, pursuant to an amendment of the collective bargaining agreements, was 6%. The raise for supervisory employees (including plaintiffs) was 5.7%.

"By opinion of June 21, 1996, the Supreme Court[,] in *Oregon State Police * * * [,]* declared Measure 8 unconstitutionally void. On October 8, 1996, pursuant to that decision, [defendant] reinstated its employer payment (referred to as 'pick-up') of its supervisors' pension contributions.

"Plaintiffs are the Sheriff of Jackson County and the supervisory employees of the Jackson County Sheriff's Office. They are all members of the group which received a 5.7% pay increase. Plaintiffs are suing for the return of their 6% deductions made between December 7, 1994[,] and October 8, 1996, as damages for breach and impairment of their retirement contracts.

"Three plaintiffs (Steven[ ] Daniels, Brad Hope and Dewey P. Patten) were promoted from the bargaining unit to supervisory positions after Measure 8 was effective. * * *

"Plaintiffs Miltona L. Hendrix and Michel Hollaran-Marshall were new hires into their supervisory positions on January 8, 1996, and February 20, 1996, respectively."

When a summary judgment is on appeal,

> "[w]e review to ascertain whether the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In so doing, we view the record in the light most favorable to the party opposing summary judgment." *Quillen v. Roseburg Forest Products, Inc.*, 159 Or App 6, 9, 976 P2d 91 (1999).

*See also* ORCP 47 C.[3]

## A. The Breach of Contract Claim

■ On appeal, defendant makes three arguments under its assignment that the trial court erred in granting summary judgment on plaintiffs' breach of contract claim. First, defendant asserts that, because plaintiffs Hendrix and Holloran-Marshall were hired after Measure 8 became effective, "the contract accepted by [them] did not include a condition that [defendant] would pick up their contributions" and "these two plaintiffs agreed to make their own pension contributions." Plaintiffs counter that there is no evidence in the record that any of the plaintiffs had employment agreements that were different from those of any other employees.

On December 7, 1994, defendant enacted an ordinance that eliminated its obligation to pick up its employees' retirement contributions. Hendrix was hired on January 8, 1996, and Holloran-Marshall was hired on February 20, 1996. The nature of the contractual obligation alleged by

---

[3] ORCP 47 C (1997) provided, in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

Oregon Laws 1999, chapter 815, section 1, amended ORCP 47 C. Oregon Laws 1999, chapter 815, section 2, provides that the amendments to ORCP 47 C apply to all actions pending on or commenced after October 23, 1999. The parties have not raised to us the issue of whether Oregon Laws 1999, chapter 815, applies to this case or affects the analysis used to resolve it. However, even if the legislature's changes to ORCP 47 C apply, the outcome would not be affected.

plaintiffs in their breach of contract claim is that the obligation to pick up an employee's retirement contribution arises from the employment agreement in effect at the inception of employment. If Hendrix and Holloran-Marshall were employed after defendant elected not to pick up their employees' retirement contributions, then arguably defendant had no contractual obligation to pay the contributions because Hendrix and Holloran-Marshall's services were not rendered in exchange for the promise to pick up the contributions. Accordingly, summary judgment is precluded on this record because there is an issue of fact about whether Hendrix and Holloran-Marshall's employment contracts with defendant obligated defendant to pick up their retirement account contributions.

■     Second, defendant argues that there is an issue of fact that precludes summary judgment regarding plaintiffs Daniels, Hope and Patten for a similar reason. Measure 8 became effective on December 8, 1994. Defendant asserts that

> "[t]he employment contract of [Daniels, Hope and Patten], as members of a bargaining unit, was modified by collective bargaining prior to the effective date of Measure 8 to require them to make their own pension contributions in return for a [ ] 6% pay increase. When they were promoted to supervisory positions, they continued to make their own contributions as they had agreed to do. [Defendant's] compliance with Measure 8 was neither a breach nor an impairment of any condition of the employment contract to which they had agreed."

There is evidence that Daniels, Hope and Patten were promoted after defendant had ceased to pick up the pension contributions for supervisory employees and after the collective bargaining unit, of which Daniels, Hope and Patten were members, agreed with defendant that its members would receive a pay increase and make their own contributions. In light of plaintiffs' theory underlying their breach of contract claim, that evidence raises a question of fact about the employment terms under which Daniels, Hope and Patten were performing their work during the pertinent time periods. Those issues of fact preclude summary judgment for Hendrix, Holloran-Marshall, Daniels, Hope and Patten.

Third, defendant argues that, with regard to the remaining plaintiffs, there is a genuine issue of material fact concerning whether defendant "gave a 5.7% compensation increase to the remaining plaintiffs for the purpose of offsetting their 6% loss from Measure 8" such that "[t]heir damages arising from deductions pursuant to Measure 8, if any, cannot exceed 0.3% of their compensation during the effective period of Measure 8." These plaintiffs counter that the trial court appropriately granted summary judgment in their favor and awarded the correct amount of damages because "the pay raise was not an offset and [defendant] * * * improperly shift[ed] part of the economic burden of providing a pension onto the plaintiffs in clear violation of the standard in *Oregon [State] Police*[.]" Plaintiffs explain:

> "In reviewing Ballot Measure 8's requirement that each employee contribute 6% of compensation to their [*sic*] pension plan, the court in *Oregon State Police* * * * rejected the argument that this requirement was merely a question of salary which was within the control of each individual employer. The analysis adopted by the court was to determine whether the impact of this provision of Measure 8 was to shift part of the economic burden of providing a promised pension from the employer to the employee. The court held that such a shift of economic burden would frustrate the purpose and intent of the pension contract and constitute an impairment of contract.
>
> "The task in this case, just as it was in *Oregon State Police*[,] * * * is to determine whether [defendant's] actions, judged in their totality, are, in fact, an attempt to shift part of the economic burden of providing a pension onto the shoulders of its employees. The 5.7% increase must be considered a market increase not because the plaintiffs have labeled it as such, but because [defendant] has consistently treated it as such. By treating this 5.7% increase as a market increase, [defendant] has lowered every management employee's salary range in comparison with the relevant market. This is precisely the kind of economic burden shifting that the court found improper in *Oregon State Police*[.]"

We do not understand defendant to argue on appeal that its failure to pick up its employees' retirement contributions during the pertinent time period was not a breach of those agreements. Rather, defendant appears to concede

that, for purposes of the breach of contract claim, the only issue as to the remaining plaintiffs is whether they are entitled to damages measured by the six percent pension pick-up that did not occur or by the 0.3 percent difference between the six percent pick-up that did not occur and the 5.7 percent pay increase. According to defendant, the evidence in the summary judgment record is "unanimous" that, when defendant enacted its ordinance, it intended the pay increase to act as an offset to the loss of the pension pick-up. On the other hand, plaintiffs assert that the evidence is uncontroverted that the 5.7 percent pay increase was intended as a raise to make defendant competitive with other employers. Consequently, they claim that they are entitled to the 5.7 percent raise granted to them by defendant in addition to the recoupment of the six percent retirement account contributions that defendant did not make.[4]

Viewed in the light most favorable to defendant, the evidence would permit a jury to find that defendant intended the 5.7 percent pay increase to be only an offset for the loss suffered by its employees because of Measure 8. Burke Raymond, the county administrator, testified:

"Q.  * * * This was simply, I guess I would call it an offset for this new requirement of payment into the pension plan?

"A.  Yes.

"Q.  Is there any document that you can point me to which states that just that clearly?

"A.  No.

"Q.  Why is that?

"A.  After Measure 8 was passed, in considering what to do, it was decided that since the union employees had

---

[1] To the extent that plaintiffs assert that *Oregon State Police* controls the outcome of this issue and requires summary judgment in their favor, we disagree. *Oregon State Police* decided whether Measure 8 was an unconstitutional impairment of contract. The issue of the amount of damages for which a public employer could be liable in the event that it breached an employment contract as a result of implementing Measure 8 was not before the court.

had the switch possible through their contractual arrangements with the county, that we had to do whatever we could try to do to take care of the program for managers.

"And since the payment on the county side for requirement was going to be decreased, that created a pool of money, and it was decided that we should give the employees as much of that money as possible to make themselves whole."

The language of the December 7, 1994, ordinance enacted by the Jackson County Board of County Commissioners also tends to support Raymond's testimony.

On the other hand, there is also evidence in the record that supports plaintiffs' position that the purpose of the 5.7 percent pay increase was to make defendant's salaries competitive with the salaries of other employers. Thus, there is a genuine issue of material fact on the amount of the remaining employees' damages in the breach of contract action. Consequently, the trial court erred in granting summary judgment to those plaintiffs on that claim. There are also genuine issues of material fact concerning whether defendant was obligated by contract to pick up the retirement contributions of plaintiffs Hendrix, Holloran-Marshall, Daniels, Hope and Patten.

## B. The Section 1983 Claim

Defendant moved to dismiss plaintiffs' section 1983 claim in the trial court under ORCP 21 on the ground that plaintiffs had failed to state a claim for relief because plaintiffs' allegations refer to Measure 8 and defendant "is not alleged to have enacted any legislation [that] impaired any contract." Additionally, in its brief defendant makes a second motion, apparently for the first time on appeal, to dismiss the section 1983 claim for failure to state facts sufficient to constitute a claim. ORCP 21(A)(8). Defendant asserts that a violation of the Contracts Clause cannot be remedied through a section 1983 claim and that "[d]amages are not an available remedy for a claim of impairment of contract."[5]

---

[5] Based on plaintiffs' arguments to us, we do not understand them to contest defendant's ability to move for dismissal of the 1983 claim for the first time on appeal on those grounds. Consequently, we express no opinion on that issue.

■   We do not find it necessary to consider defendant's second motion to dismiss, because we agree that defendant did not impair the obligation of its contract with plaintiffs; rather, it breached that contract, which is not a constitutional violation.[6] Because *defendant* did no more than to breach its contracts with plaintiffs; it did not violate any federally protected rights. There is thus no basis for a section 1983 claim.[7] The Oregon Supreme Court has made it clear that the state and federal constitutional provisions that prohibit impairing the obligation of a contract do not turn every breach of contract by a public body into a constitutional violation. In *Eckles v. State of Oregon*, 306 Or 380, 760 P2d 846 (1988), the court explained the difference between an action that impairs a legislatively created contract and one that merely breaches it: an act that purports to abrogate the state's contractual obligation is an unconstitutional impairment, while an act that only requires actions that violate the contract is a breach, not an impairment. *Eckles*, 306 Or at 399-400. In *Eckles*, one section of the challenged act changed the law governing the State Industrial Accident Fund to permit the state to use surplus funds for general state purposes, rather than limiting their use to workers' compensation matters. A separate section ordered the actual transfer of money from the Fund to the state's general fund. The Supreme Court held that the first section impaired an obligation of the contract between the state and the beneficiaries of the Fund because it abolished the state's previous obligation to use the fund for limited purposes. On the other hand, the second section did not impair the obligation of that contract but, rather, required the state to breach it. *Id.* at 399-401.

In *Hughes v. State of Oregon*, 314 Or 1, 838 P2d 1018 (1992), the issue was whether an act that changed the laws

---

[6] The concurrence discusses a number of United States Supreme Court cases before concluding that any Contracts Clause violation did not give rise to a section 1983 claim. Because we conclude that there was no constitutional violation, we do not need to comment on the concurrence's analysis.

[7] Indeed, that result flows from plaintiffs' complaint itself. In their First Claim for Relief, the section 1983 claim for impairment of contract, plaintiffs allege that "*Measure 8* impairs the obligation of each plaintiff's pension contract with his or her employer." (Emphasis added.) They do not allege that defendant's ordinance did so. Their subsequent arguments in support of this claim, and the concurrence's extensive discussion of those arguments, cannot overcome that basic point.

relating to the taxation of public employee retirement benefits impaired the obligation of the state's contract with public employees. In answering that question, the Supreme Court relied on the distinction in *Eckles* between impairment and breach of a contract. It held that the section of the act that retroactively repealed a guaranty that benefits would not be subject to state taxation was a nullity because it impaired an obligation of the contract for benefits based on work performed before the effective date of the act. However, the section that repealed the actual tax exemption did not impair any contractual obligation because by itself it did not deny the existence of the obligation. Rather, that section breached the contract. *Hughes*, 314 Or at 31-32.

Both *Eckles* and *Hughes* were based on Article I, section 21, of the Oregon Constitution. Measure 8, which is at issue in this case, was an amendment to the Oregon Constitution, and thus any attack on it had to be based on the Contracts Clause, rather than on the state constitution. However, in *Eckles* and *Hughes* the Oregon Supreme Court relied on decisions of the United States Supreme Court under the Contracts Clause for the distinction between impairing and breaching a contract. It thus concluded that that distinction is part of both constitutions.

In *Oregon State Police*, the court held that section 10 of Measure 8, which prohibited public employers from picking up their employees' contributions to PERS, impaired the obligation of the employees' PERS contracts and therefore violated the Contracts Clause. That provision repudiated the obligation that those contracts contained. In this case, after the adoption of Measure 8 defendant granted plaintiffs a pay raise and began deducting six percent pension contributions from their pay. Unlike Measure 8, defendant's actions did not deny the obligation of its contracts with plaintiffs. Rather, defendant failed to honor those obligations, thereby breaching those contracts.

In short, *Measure 8* impaired the obligation of the contracts, while *defendant* breached the terms of those contracts.[8] The relationship between Measure 8 and defendant's

---

[8] The concurrence suggests that the ordinance that the county adopted in itself impaired the obligation of the contracts. 169 Or App at 138-39. However, the

actions is similar to that between the sections that impaired the contractual obligations in *Eckles* and *Hughes* and the sections that implemented the impairing statutes. Thus, in *Eckles* one section changed the state's obligation to the beneficiaries of the Fund, while another section ordered the transfer of money from the fund to the state; in *Hughes* one section repealed the promise that pension benefits would be tax-free, while another section repealed the tax exemption. Only the actions that unilaterally changed the state's obligation actually impaired the contracts.

Because Measure 8 changed defendant's obligations under its contracts with plaintiffs, it impaired the obligation of those contracts. Measure 8, however, was an act of the state with which the county had nothing to do. Defendant's subsequent actions that implemented Measure 8 were breaches of its contracts with plaintiffs, but they did not impair those contracts. Thus, if there is a section 1983 claim arising from Measure 8 for impairment of plaintiffs' contracts, then the state, not defendant, is the proper defendant. It was the state, not defendant, that violated plaintiffs' protected federal rights. Because defendant did not impair the contracts, plaintiffs do not have a claim against it under section 1983.

## III.   PLAINTIFFS' CROSS-APPEAL

On cross-appeal, plaintiffs argue that the trial court erred in dismissing their ORS chapter 652 wage claim. They assert that defendant violated ORS 652.610(3) by deducting six percent from the wages of each plaintiff when he or she had not authorized the deductions and the law did not require them. According to plaintiffs, "[t]he trial court erred in holding that [defendant] had not violated ORS 652.610(3) and this court should hold that [defendant's] 6% deduction constituted an improper wage deduction in violation of Oregon statute" and "reverse the trial court's finding on the

---

ordinance shows that the county simply recognized that Measure 8 had changed its contractual obligations. The ordinance responded to the effects of Measure 8; it did not independently impair the obligation of the contracts. The timing of the ordinance does not affect the fact that Measure 8 was the impairing enactment and that defendant adopted the ordinance in response to that provision.

question of whether there was a violation of ORS 652.610(3) and allow the trial court to award damages including attorney fees as appropriate." They allege that "[d]efendant county has declined to pay to plaintiffs the amounts improperly withheld from their pay for the period from December 1994 through October 1996[,]" and that "[d]efendant county has failed to properly pay the full amount of wages due each plaintiff on all paydays between December 1994 and October 1996." They also allege that they are entitled to attorney fees under ORS 652.200.

Plaintiffs moved for summary judgment on this claim. In their memorandum in support of their motion, plaintiffs represented to the trial court that defendant had "violated ORS 652.610(3) by making an improper deduction from its employees' wages and violated ORS 652.120 by failing to pay each employee the full amount due and owing to them on each payday." Defendant also moved for summary judgment on this claim. In its motion, defendant asserted that "[p]laintiffs' grievance is not that [defendant] failed to pay all the salary due them, but that [defendant] failed to pay their pension funds on their behalves" and that, under the reasoning in *Oregon State Police*, "[t]his case also is not about payment of salaries; it is about payment of pensions. The [breach of contract claim] seeks damages for [defendant's] failure to [make] pension payments in addition to salary, not for a failure to pay all the salary [that] was due. The [wage claim] is simply misconceived and should be dismissed." In its order concerning the summary judgment motions, the trial court granted defendant's motion for partial summary judgment concerning the wage claim without stating its reasoning.

On cross-appeal, the question presented, according to plaintiffs' brief, is: "Did the court err in rejecting plaintiffs' claim that [defendant] improperly deducted monies from their paychecks contrary to ORS 652.200?" In their summary of argument, plaintiffs state: "The trial court erred in dismissing plaintiffs' claim that the deductions from plaintiffs' paychecks are a violation of ORS 652.610(3)." In their assignment of error, they state: "The court erred in granting defendant's motion to dismiss plaintiffs' claim that [defendant] violated ORS 652.610(3) in improperly making withholding

from plaintiffs' salary." Defendant counters that the theory pled in plaintiffs' complaint was that defendant was entitled to attorney fees under ORS 652.200 because defendant had failed to pay the full amount of wages due to each plaintiff but that the theory advanced by plaintiffs on appeal is a different theory based on ORS 652.610(3). Defendant argues that plaintiffs should not be permitted to change the theory underlying their claim on appeal. We do not see the complete change of theory that defendant perceives. Rather, the fundamental basis of plaintiffs' claims was the same at trial and on appeal; it is also correct.

ORS 652.200(2) authorizes an award of attorney fees in any action for unpaid wages under ORS 652.110 *et seq.* ORS 652.610(3) prohibits an employer from "withhold[ing], deduct[ing] or divert[ing] any portion of an employee's wages" unless specific circumstances, which are not present in this case, exist. ORS 652.615 provides for "a private cause of action for a violation of ORS 652.610(3) for actual damages or $200, whichever is greater[,]" and also allows the court to award reasonable attorney fees.

Defendant misconceives the nature of a claim for deductions that violate ORS 652.610.[9] Plaintiffs allege that defendants improperly withheld the six percent deduction from plaintiffs' wages and that defendant, thus, failed to pay all wages due to plaintiffs. That is sufficient to state a claim that defendant improperly withheld, deducted or diverted retirement account contributions from plaintiffs' wages contrary to ORS 652.610(3). That statute describes certain permissible deductions from an employee's wages and makes all other deductions impermissible. Thus, an employer who makes a deduction that ORS 652.610(3) prohibits has, as a matter of law, failed to pay wages in the amount of the deduction. The employee may recover those unpaid amounts by a claim for unpaid wages, and may recover attorney fees under ORS 652.200(2) if the employee prevails. The separate claim under ORS 652.615 is irrelevant to that right.

---

[9] Defendant's argument that the case is not about the payment of salaries but, rather, is about the payment of pensions also misses the mark. The money that defendants deducted came from plaintiffs' current salaries; whatever the ultimate disposition of that money, if the deduction was not one that ORS 652.610 authorizes, it constituted a failure to pay wages.

That is precisely how we treated the predecessor statute, *former* ORS 652.410, in *Schulstad v. Hudson Oil Co.*, 55 Or App 323, 637 P2d 1334 (1981), *rev den* 292 Or 825 (1982). In *Schulstad*, we held that the defendant could not legally deduct alleged shortages from the plaintiff's wages. Based on that conclusion, we affirmed the trial court's judgment awarding the plaintiff unpaid wages, penalty wages under ORS 652.150, and attorney fees under ORS 652.200(2). When the legislature adopted ORS 652.610(3) in 1977, it repealed *former* ORS 652.410 in the same act. Or Laws 1977, ch 618, §§ 1, 2.[10] The change gave greater detail to the former deductions statute, but there is no reason to think that the legislature intended the wage payment statutes to operate in any different fashion: an illegal deduction leads to a claim for unpaid wages. Plaintiffs' arguments in this case are consistent with the law as we described it in *Schulstad*.

In contrast, ORS 652.615 creates a separate claim for a violation of ORS 652.610(3). The legislature created that claim in 1980, three years *after* it adopted ORS 652.610(3) in 1977. Before the creation of what is now ORS 652.615, the way to recover an illegal deduction was to file a normal wage claim.[11] Nothing in the legislature's action in creating a new, separate claim suggests that it intended to abolish the existing remedy; rather, the legislature added a new remedy to the existing one. Among other things, the separate claim includes a minimum damage amount, which is not available as part of a regular wage claim. Or Laws 1980, Spec Sess, ch 1, § 2 (creating claim as ORS 652.610(5)); Or Laws 1981, ch

---

[10] *Schulstad* involved events that occurred before the effective date of the repeal of *former* ORS 652.410.

[11] The concurrence describes the pleading sequence in *Schulstad*, apparently in the belief that it casts doubt on the relevance of that case, which involved *former* ORS 652.410, the predecessor of ORS 652.610(3), to this case. In fact, that pleading sequence simply shows one of the ways in which either the previous or the present deductions statute may function in a normal wage claim case. In *Schulstad*, the plaintiff pled a failure to pay him his wages and then relied on the deductions statute as a defense when the employer asserted that it had a right to deduct the unpaid wages. In this case, plaintiffs alleged the facts behind the deductions in their complaint and asserted that those facts constituted a failure to pay the full amount of their wages. Each approach is a different way to reach the underlying issue of whether the deductions statute permitted the defendant to withhold the unpaid wages.

594, § 7 (moving claim from ORS 652.610(5) to separate section, now ORS 652.615).

In short, there is no such thing as a "claim" under ORS 652.610(3). Rather, when an employer deducts amounts that are illegal under that statute, the employee may file one or both of two different kinds of claims: (1) a regular wage claim under ORS 652.120 (requiring payment of all wages at regular paydays) or ORS 652.140 (concerning payment of wages at termination of employment); or (2) a specific claim for illegal deductions under ORS 652.615, which includes the minimum damage amount and a separate, possibly easier, right to attorney fees. In this case, plaintiffs have adequately pled a claim of the first kind, and that claim includes with it the right to attorney fees under ORS 652.200(2) if they are successful. The trial court erred in dismissing the wage claim.

Petition to reconsider decision allowed; original opinion vacated; on appeal, judgment on claims for breach of contract and violation of 42 USC § 1983 reversed and remanded; on cross-appeal, judgment on wage claim reversed and remanded; otherwise affirmed.

**EDMONDS, P. J.,** concurring.

I agree with the majority's analysis except in two respects: The majority reasons that defendant's ordinance did not impair the obligations of its employment agreements with plaintiffs, and, thus, there is no basis for a section 1983 claim. I would hold that, although the ordinance operated to impair the agreements, what plaintiffs seek based on the facts alleged is properly characterized under a controlling United States Supreme Court case as solely a claim for breach of contract rights.

Second, in regard to plaintiffs' cross-appeal, the majority holds:

> "[T]here is no such thing as a 'claim' under ORS 652.610(3). Rather, when an employer deducts amounts that are illegal under that statute, the employee may file one or both of two different kinds of claims: (1) a regular wage claim under ORS 652.120 (requiring payment of all wages at regular paydays) or ORS 652.140 (concerning payment of wages at

termination of employment); or (2) a specific claim for illegal deductions under ORS 652.615, which includes the minimum damage amount and a separate, possibly easier, right to attorney fees." 169 Or App at 134.

In my view, the plain language of ORS 652.610 and ORS 652.615 manifests a legislative intent to create a claim that is discrete from any claim made under ORS 652.120 or ORS 652.140, and plaintiffs err in their endeavor to conflate the two statutory schemes. I would hold that when plaintiffs' allegations are viewed in the light most favorable to them, plaintiffs properly allege only a claim under ORS 652.110 through ORS 652.200.

## I.   THE SECTION 1983 CLAIM

Ballot Measure 8 was approved by the voters in the November 8, 1994, General Election, and its effective date was December 8, 1994. It amended Article IX of the Oregon Constitution, to provide, in relevant part:

"Section 10. * * * (1)   Notwithstanding any existing State or Federal laws, an employee of the State of Oregon or any political subdivision of the state who is a member of a retirement system or plan established by law, charter or ordinance, or who will receive a retirement benefit from a system or plan offered by the state or a political subdivision of the state, must contribute to the system or plan an amount equal to six percent of their salary or gross wage.

"(2)   On or after January 1, 1995, the state and political subdivisions of the state shall not thereafter contract or otherwise agree to make any payment or contribution to a retirement system or plan that would have the effect of relieving an employee, regardless of when that employee was employed, of the obligation imposed by subsection (1) of this section.

"(3)   On or after January 1, 1995, the state and political subdivisions of the state shall not thereafter contract or otherwise agree to increase any salary, benefit or other compensation payable to an employee for the purpose of offsetting or compensating an employee for the obligation imposed by subsection (1) of this section."

In response to Ballot Measure 8, defendant enacted an ordinance on December 7, 1994. The ordinance provides, in part:

"WHEREAS, Measure 8 was adopted by the voters in the November 8, 1994, general election;

"WHEREAS, Measure 8 requires employees of Jackson County who are members of PERS or Jackson County's Standard Insurance Company retirement plan for the Sheriff's Office (the Standard Insurance Plan) to contribute to the plan six percent of their salary;

"WHEREAS, Measure 8 prohibits Jackson County from contracting or agreeing on or after January 1, 1995, to relieve its employees of their contribution obligation under Measure 8;

"WHEREAS, employee contributions to PERS or the Standard Insurance Plan would result in additional federal and state income tax liability to employees;

"WHEREAS, such additional tax liability would be avoided if Jackson County 'picks up' such employee contributions, as that term is used in Internal Revenue Code section 414(h)(2); and

"WHEREAS, by Board Order Number 416-94, dated September 29, 1994, the Board of Commissioners indicated an intent to increase salary ranges for non-union employees at the discretion of the county;

"Now, therefore,

"The Board of County Commissioners of Jackson County ORDERS that:

"1. The salary ranges for all non-union county employees shall immediately be increased by 5.7%.

"2. The County Administrator is authorized to raise the salaries of non-union employees by 5.7% according to the existing management compensation plan as that authority has been previously delegated to the Administrator by Jackson County Code section 216.09. Such raise shall be retroactive to November 28, 1994.

"3. Effective for salary earned on or after November 28, 1994, the County will cease making its current six percent pick-up contributions under ORS 237.075 to PERS.

"* * * * *

"5.  Employees shall contribute six percent of their salary to PERS and the Standard Insurance Plan as follows:

"a.  Each employee covered by the OPEU agreement who is or becomes a member of PERS, and each non-union employee who is or becomes a member of the Standard Insurance Plan or PERS, shall contribute six percent of the employee's salary to such retirement plan, effective for salary earned on or after November 28, 1994, or such later date as the employee becomes a member of such retirement plan.

"b.  Each employee covered by the JCSEA agreement who is or becomes a member of the Standard Insurance Plan or PERS shall contribute six percent of the employee's salary to such retirement plan, effective for salary earned on or after the date established by agreement between Jackson County and JCSEA or such later date as the employee becomes a member of such retirement plan. Such agreements may treat sworn and unsworn employees differently, including the establishment of different effective dates for sworn and unsworn employees.

"6.  Such contributions, although designated as employee contributions, will be paid by Jackson County to such retirement plans in lieu of such contributions by the employees. Employees do not have the option of choosing to receive the contributed amounts directly and paying the employee contribution directly instead of having the contributed amounts paid by Jackson County to such retirement plans. Such contributions are deemed to be 'picked up' for purposes of Internal Revenue Code section 414(h)(2) ('pick-up contributions'). This section 6 is effective for salary earned on or after November 28, 1994, except that for non-union employees who are members of the Standard Insurance Plan, it is effective for salary earned on or after December 12, 1994.

"7.  Employees' reported compensation on the W-2 form for tax purposes will be reduced by the amount of such pick-up contributions.

"8.  Such pick-up contributions will be made on a salary reduction basis, so that each employee's salary remaining after the pick-up contribution will be as reduced by the amount of the pick-up contribution."

According to the majority,

"the ordinance shows that the county simply recognized that Measure 8 had changed its contractual obligations. The ordinance responded to the effects of Measure 8; it did not independently impair the obligation of the contracts." 169 Or App at 129 n 8.

The majority is mistaken. Measure 8, by its terms, prohibited political subdivisions of the state from entering into agreements or making payments that would have the effect of relieving employees from making their own retirement contributions "[o]n or after January 1, 1995." As of November 28, 1994, plaintiffs had existing contracts with defendant that required defendant to make retirement contributions on behalf of its employees. Paragraph 5 of defendant's December 7 ordinance expressly requires employees to contribute 6 percent of their salary to their retirement plans "effective for salary earned on or after November 28, 1994." In other words, defendant impaired its contractual obligations with its employees on December 7, before Measure 8 became effective. Any breach of those contracts that occurred thereafter, on the dates when the county's contributions required by the contracts were not made, was pursuant to the direction of the ordinance.

Moreover, Measure 8 should not be understood as a self-executing impairment of the specific contracts between defendant and plaintiffs that subjects defendant to liability under section 1983. An impairment of contract occurs when, by operation of law, there is an elimination of an obligation under which performance is required. *Eckles v. State of Oregon*, 306 Or 380, 399, 760 P2d 846 (1988), *appeal dismissed* 490 US 1032 (1989). Measure 8 does not provide expressly that the county's obligations under the contracts that are the subject of this case are eliminated. Rather, the measure was a general prohibition against the making of payments under such contracts after January 1, 1995. For

the provisions of the Measure to be enforced against particular contracts, implementing legislative action was required by each political subdivision regarding its own obligations. Also, Measure 8 was unconstitutional and *void ab initio*. The county could have lawfully declined to respond to its mandate, and no county liability for a purported violation of section 1983 would have occurred. Until the county acted to eliminate the obligations under its own contracts, there was no liability on its part. The combination of these circumstances, that defendant enacted its ordinance to be effective at a time before Measure 8 became effective, the need for implementing legislation for liability to accrue and the fact that defendant was not legally required to enact its ordinance all lead to the conclusion that the impairment of the contracts in this case occurred as a result of the county's ordinance and not Measure 8, as the majority asserts.

Unlike the majority, the parties recognize the legal significance of the county's ordinance to plaintiffs' claims. Plaintiffs specifically allege in their section 1983 claim that they had agreements with defendant for defendant to pick up their retirement contributions and that

> "[o]n December 7, 1994[,] defendant passed ordinance #488-94 which deleted employer pick up and required plaintiffs to commence paying a 6% employee contribution to their pension plans. This ordinance was in response to Measure 8."

In its answer, defendant admits that allegation. Without the enactment of the county's ordinance, there could be no section 1983 liability on the part of the county.

Whether plaintiffs' complaint alleges a cognizable claim under section 1983 as the result of the enactment of the ordinance has been a primary issue both in the trial court and on appeal. Defendant moved to dismiss plaintiffs' section 1983 claim in the trial court under ORCP 21 on the ground that plaintiffs had failed to state a claim for relief because plaintiffs' allegations refer to Measure 8, and defendant "is not alleged to have enacted any legislation which impaired any contract."[1] Additionally, in its brief, defendant makes a

---

[1] 42 USC § 1983 (Supp III 1998) provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or

second motion, apparently for the first time on appeal, to dismiss the section 1983 claim for the failure to state facts sufficient to constitute a claim pursuant to ORCP 21(A)(8). Relying on *Carter v. Greenhow*, 114 US 317, 5 S Ct 928, 29 L Ed 202 (1885), and *Andrews v. Anne Arundel County, Md.*, 931 F Supp 1255 (D Md 1996), *aff'd* 114 F3d 1175, *cert den* 522 US 1015 (1997), defendant asserts that a violation of the Contracts Clause cannot be remedied through a section 1983 claim and that "[d]amages are not an available remedy for a claim of impairment of contract."[2]

---

causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

Additionally, the Contracts Clause, Article I, section 10, of the United States Constitution, provides: "No State shall * * * pass any * * * Law impairing the Obligation of Contracts[.]"

[2] Defendant raised a similar argument to the trial court in its objection to plaintiffs' motion for attorney fees. In their brief on appeal, plaintiffs focus on defendant's understanding of *Carter*, arguing that defendant "has misread *Carter*, but nonetheless the Oregon Supreme Court has established the law in this state and if [defendant] is to be successful in advocating its reading of *Carter* it is an argument that must be made to the Oregon Supreme Court." Plaintiffs also state that

"[i]n response to the plaintiffs' motion for attorney[ ]fees, [defendant] somewhat belatedly raised the question of whether *Carter* * * * would bar any claim by plaintiffs for impairment of contract pursuant to 42 USC § 1983. Consequently, [defendant] argued that the trial court should not award fees pursuant to the authority granted by 42 USC § 1988. [Defendant] did not contest the amount of fees requested by plaintiffs. [Defendant] now raises the issue of the application of *Carter* both by way of a motion to dismiss, as well as an appeal on the court's underlying determination that there had been an impairment of contract remediable pursuant to 42 USC § 1983. [Defendant] argues that *Carter* stands for the proposition that the sole remedy for a violation of the [C]ontract[s] [C]lause under § 1983 is for invalidation of the impairment. Unfortunately[,] a careful review of *Carter*, particularly in its historical context, fails to reveal the neat and simple rule espoused by [defendant] in this case." (Footnote omitted.)

Based on plaintiffs' arguments to us, I do not understand plaintiffs to contest the ability of defendant to move for dismissal of the section 1983 claim for the first time on appeal on the grounds that a violation of the Contracts Clause cannot be remedied through a section 1983 claim and that "[d]amages are not an available remedy for a claim of impairment of contract." Consequently, I express no opinion on that issue.

*Carter* was one of several United States Supreme Court cases known as the Virginia Coupon Cases. In *Carter*, the plaintiff alleged that, as full payment of his tax obligation, he tendered to a city treasurer, whose duty it was under Virginia law to collect state taxes, a small amount of money and coupons from the bonds that had been issued by the State of Virginia. The treasurer refused to accept the plaintiff's tender. Thereafter, the treasurer seized and sold the plaintiff's personal property to pay the taxes. After the seizure of his property, the plaintiff sued the treasurer for damages in the Circuit Court of the United States. The plaintiff alleged that the Virginia statute under which the coupons were issued permitted their use to pay such taxes but that a subsequent statute that forbade tax collectors from accepting the coupons as payment unconstitutionally impaired that right under the Contracts Clause. The defendant's demurrer to the plaintiff's complaint was sustained by the circuit court, and the plaintiff proceeded by writ of error to the Supreme Court.

In reaching its decision to affirm, the Court began by describing the relevant jurisdictional statute as well as the statute defining the plaintiff's cause of action:

"The sixteenth clause of § 629 Rev. Stat. defining the original jurisdiction of the Circuit Court of the United States, gives to them cognizance, without reference to the sum or value in controversy, or the citizenship of the parties, 'of all suits authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom or usage of any State, of any right, privilege or immunity secured by the Constitution of the United States, or of any right secured by any law providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States.'

"Similar jurisdiction is conferred upon District Courts by the twelfth clause of § 563 Rev. Stat.

"§ 1979 Rev. Stat., provides that 'every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States, or other person within the jurisdiction thereof, to the deprivation of any

rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.'

"These three provisions constituted the first section of the act of April 20, 1871, entitled 'An Act to enforce the provisions of the Fourteenth Amendment to the Constitution of the United States, and for other purposes.' 17 Stat. 13. In that section, the language conferring jurisdiction in the courts, was as follows:

" 'Such proceeding to be prosecuted in the several District or Circuit Courts of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts, under the provisions of the act of the ninth of April, eighteen hundred and sixty-six, entitled, "An Act to protect all persons in the United States in their civil rights, and to furnish the means of their vindication" and the other remedial laws of the United States which are in their nature applicable in such cases.'

"§ 2 of the act here referred to, of April 9, 1866, 14 Stat. 27, provided 'that any person who, under color of any law, statute, ordinance, regulation or custom, shall subject, or cause to be subjected, any inhabitant of any State or Territory to the deprivation of any right secured or protected by this act, or to different punishment, pains or penalties on account of such person having, at any time, been held in a condition of slavery or involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, or by reason of his color or race, than is prescribed for the punishment of white persons, shall be deemed guilty of a misdemeanor, and, on conviction, shall be punished by fine not exceeding one thousand dollars, or imprisonment not exceeding one year, or both, in the discretion of the court.' " *Carter*, 114 US at 320-21.

The Court explained that the issue was

"whether the facts stated in the plaintiff's declaration constitute a cause of action within the terms of § 1979 Rev. Stat., that is, whether he shows himself, within its meaning, to have been subjected by the defendant, under color of a statute of a State, to the deprivation of a right, privilege or immunity secured by the Constitution." *Carter*, 114 US at 321.

It reasoned:

"The acts charged against the defendant are, that he refused to receive from the plaintiff the coupons tendered in payment of taxes, and thereafter proceeded to levy upon and take his property for the purpose of collecting such taxes in money. The rights alleged to be violated are the right to pay taxes in coupons instead of in money, and, after a tender of coupons, the immunity from further proceeding to collect such taxes as though they were delinquent. These rights the plaintiff derives from the contract with the State, contained in the act of March 28, 1879, and the bonds and coupons issued under its authority.

"How and in what sense are these rights secured to him by the Constitution of the United States? The answer is, by that provision, Art. I., Sec. 10, which forbids any State to pass laws impairing the obligation of contracts. That constitutional provision, so far as it can be said to confer upon, or secure to, any person, any individual rights, does so only indirectly and incidentally. It forbids the passage by the States of laws such as are described. If any such are nevertheless passed by the legislature of a State, they are unconstitutional, null and void. In any judicial proceeding necessary to vindicate his rights under a contract, affected by such legislation, the individual has a right to have a judicial determination, declaring the nullity of the attempt to impair its obligation. This is the only right secured to him by that clause of the Constitution. But of this right the plaintiff does not show that he has been deprived. He has simply chosen not to resort to it. The right to pay his taxes in coupons, and the immunity from further proceedings, in case of a rejected tender, are not rights directly secured to him by the Constitution, and only so indirectly as they happen in this case to be the rights of contract which he holds under the laws of Virginia. And the only mode in which that constitutional security takes effect is by judicial process to invalidate the unconstitutional legislation of the State, when it is set up against the enforcement of his rights under his contract. The mode in which Congress has legislated in aid of the rights secured by that clause of the Constitution, is, as is pointed out with clearness and fulness in the opinion of the court in the *Civil Rights Cases*, 109 U. S. 3-12, by providing for a review on writ of error to the judgments of the State courts, in cases where they have failed properly to give it effect, and by conferring jurisdiction upon the Circuit

Courts by the act of March 3, 1875, ch. 137, 18 Stat. 470, of all cases arising under the Constitution and laws of the United States, where the sum or value in dispute exceeds $500. Congress has provided no other remedy for the enforcement of this right." *Carter*, 114 US at 321-23.

The parties have different understandings of the holding of *Carter*. Defendant asserts that, under *Carter*,

"[t]he sole remedy for a violation of the Contract[s] Clause is invalidation of the impairment. * * * The prayer does not seek invalidation. There was no need to do so: Measure 8 had already been declared invalid in *Oregon State Police Officers' Assn. v. State of Oregon*, [323 Or 356, 918 P2d 765 (1996)]. Rather, the prayer is for damages only. All that the § 1983 claim adds to the claim for breach is a prayer for attorney fees under 42 USC § 1988."

Plaintiffs respond:

"A better reading of *Carter* * * * is that it stands for the proposition that common law actions such as trespass, which are one step removed from the basic issue of contract enforcement or invalidation, are not within the scope of the predecessor of § 1983. This approach to *Carter* * * * is undoubtedly more consistent with the subsequent development of § 1983 which is now much more than the simple jurisdictional statute that it was in 1885. This approach would also be consistent with the use of § 1983 as a jurisdictional basis by the Oregon Supreme Court in *Tissue v. State of Oregon*[, 323 Or 356, 918 P2d 765 (1996), one of the consolidated cases in *Oregon State Police*].

"As stated above the issues of impairment and the jurisdictional scope of 42 USC § 1983 have already been decided in Oregon[.]"

In *Pleasants v. Greenhow*, 114 US 323, 5 S Ct 931, 29 L Ed 204 (1885), another Virginia Coupon case, the plaintiff filed a bill in equity in the Circuit Court of the United States against the city treasurer, who was also the defendant in *Carter*. The plaintiff did not seek breach of contract damages. Rather, he requested that the defendant

"be perpetually enjoined from taking steps, by distraint of the complainant's property, to collect certain taxes claimed by the defendant to be due to the State of Virginia, amounting to $36.25, but for which the bill avers the complainant

tendered in payment the exact amount thereof, for a part, coupons cut from bonds issued by the State under the act of March 30, 1871, and part in money." *Pleasants*, 114 US at 324.

The federal circuit court dismissed the bill for lack of jurisdiction because the amount in controversy was less than $500. On appeal, the United States Supreme Court affirmed:

"It is sought to maintain the jurisdiction in this case on the ground that the suit is authorized by Rev. Stat. § 1979, jurisdiction to entertain which is conferred by the sixteenth clause of Rev. Stat. § 629.

"The case comes within the decision just rendered in *Carter v. Greenhow*, and is governed by it. It is not, in our opinion, such a suit as is contemplated by the sections of the Revised Statutes referred to.

"As the sum or value in controversy does not exceed $500, the suit cannot be maintained as a case arising under the Constitution and laws of the United States, provided for in the act of March 3, 1875, ch 137, 18 Stat. 470. The bill was, therefore, rightly dismissed."[3] *Pleasants*, 114 US at 324.

---

[3] In *In re Ayers*, 123 US 443, 504, 8 S Ct 164, 31 L Ed 216 (1887), the Court stated that

"it was held in *Carter* * * * that no direct action for the denial of the right secured by a contract, other than upon the contract itself, would lie under any provisions of the statutes of the United States authorizing actions to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the Constitution of the United States."

In *McGahey v. Virginia*, 135 US 662, 677-78, 10 S Ct 972, 34 L Ed 304 (1890), the Court summarized *Carter* and stated that "[j]udgment was given for the defendant, and was affirmed by this court on the ground that the case did not come within section 1979, because the right claimed was not one of the rights referred to in that section." In *Holt v. Indiana Manufacturing Company*, 176 US 68, 72, 20 S Ct 272, 44 L Ed 374 (1900), the Court rejected the complainant's argument that the federal circuit court had jurisdiction under clauses 9 and 16 of section 629 of the Revised Statutes and, citing *Carter* and *Pleasants*, stated:

"If state legislation impairs the obligations of a contract, or deprives of property without due process of law, or denies the equal protection of the laws, as asserted by counsel in respect of the statutes of Indiana, remedies are found in the first section of the act of August 13, 1888, 25 Stat. 433, c. 866, giving to the Circuit Courts jurisdiction of all cases arising under the Constitution and laws of the United States; and in § 709 of the Revised Statutes, which gives a review on writ of error to the judgments of the state courts whenever they sustain the validity of a state statute or of an authority exercised under a State, alleged to be repugnant to the Constitution or laws of the United States."

The holdings in *Carter* and *Pleasants* appear to stand for the proposition that a violation of the Contracts Clause could not have been remedied through Revised Statute section 1979 and that, consequently, the federal court had no jurisdiction under Revised Statute section 629. Both cases were decided in light of the Civil Rights Acts of 1866 and 1871. In understanding the relationship between the statutes at issue in *Carter* and *Pleasants* and more modern statutes including section 1983, the Court in *Lynch v. Household Finance Corp.*, 405 US 538, 543 n 7, 92 S Ct 1113, 31 L Ed 2d 424 (1972), provided valuable guidance. In *Lynch*, the Court stated:

"Section 2 of the 1866 Act was the model for § 1 of the Civil Rights Act of 1871, 17 Stat. 13. * * * Sections 1983 and [28 USC §] 1343 (3) are direct descendants of § 1 of the Act of 1871. In 1874, Congress consolidated the various federal statutes at large under separate titles in the Revised Statutes in order to codify existing law. In the process, the substantive provision of § 1 of the 1871 Act became separated from its jurisdictional counterpart. Rev. Stat. § 1979. Although the original substantive provision had protected rights, privileges, or immunities secured by the Constitution, the provision in the Revised Statutes was enlarged to provide protection for rights, privileges, or immunities secured by federal law as well.

"Originally, suits under § 1 of the 1871 Act could be brought in either circuit or district court. After codification in 1874, the jurisdictional grant to the district courts was identical in scope with the expanded substantive provision, Rev. Stat. § 563 (12). Circuit court jurisdiction was limited to claimed deprivations of rights, privileges, or immunities secured by the Constitution or by any Act of Congress 'providing for equal rights.' Rev. Stat. § 629 (16). In 1911, when Congress abolished the circuit courts' original jurisdiction and merged the two jurisdictional sections into what is now § 1343 (3), the 'equal rights' limitation was retained in the revised jurisdictional grant."

Thus, it is arguable from the holdings in *Carter* and *Pleasants* that a violation of the Contracts Clause cannot be remedied under section 1983 and that section 1983, like

Revised Statutes section 1979, does not create federal court jurisdiction.[4]

Then, the Supreme Court decided *Dennis v. Higgins*, 498 US 439, 111 S Ct 865, 112 L Ed 2d 969 (1991). In *Dennis*, the

> "[p]etitioner d[id] business as an unincorporated motor carrier with his principal place of business in Ohio. He own[ed] tractors and trailers that [were] registered in Ohio and operated in several States including Nebraska. On December 17, 1984, he filed a class action in a Nebraska trial court challenging the constitutionality of certain 'retaliatory' taxes and fees imposed by the State of Nebraska on motor carriers with vehicles registered in other States and operated in Nebraska. In his complaint, petitioner claimed, *inter alia,* that the taxes and fees constituted an unlawful burden on interstate commerce and that respondents were liable under 42 U. S. C. § 1983. Petitioner sought declaratory and injunctive relief, refunds of all retaliatory taxes and fees paid, and attorney's fees and costs." 498 US at 441 (footnote omitted).

At issue, was whether violations of the Commerce Clause in the federal constitution could be remedied through a section 1983 claim. The Court held that section 1983 provided a remedy under the circumstances of that case. It reasoned:

> "A broad construction of § 1983 is compelled by the statutory language, which speaks of deprivations of *'any* rights, privileges, or immunities secured by the Constitution and

---

[1] In his treatise, Chemerinsky explains:

"Section 1983 does not create federal court jurisdiction. Rather, it creates a cause of action, a legal entitlement to relief, against those who, acting pursuant to state government authority, violate federal law. Federal court jurisdiction to hear § 1983 suits exists under the general federal question jurisdiction statute, 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1343(3), which grants jurisdiction for suits redressing violations of the federal laws that provide for equal rights of citizens. Section 1343(3) was part of the original statute that contained § 1983. The absence of an amount requirement in § 1343(3) made that statute important at a time when the general federal question jurisdiction statute had a minimum amount in controversy requirement. The elimination, in 1980, of the amount in controversy requirement for § 1331 rendered § 1343(3) superfluous." Erwin Chemerinsky, *Federal Jurisdiction* § 8.1, 422-23 (2d ed 1994) (footnotes omitted).

laws.' (Emphasis added.) Accordingly, we have 'repeatedly held that the coverage of [§ 1983] must be broadly construed.' *Golden State Transit Corp. v. Los Angeles*, 493 U. S. 103, 105 (1989). The legislative history of the section also stresses that as a remedial statute, it should be " 'liberally and beneficently construed.' " *Monell v. New York City Dept. of Social Services*, 436 U. S. 658, 684 (1978) (quoting Rep. Shallabarger, Cong. Globe, 42d Cong., 1st Sess., App. 68 (1871))." *Dennis*, 498 US at 443 (footnotes omitted; bracketed material in original).

In his dissent, Justice Kennedy asserted, in part:

"In our only previous case discussing a § 1983 claim brought for the violation of a supposed right secured by Article I of the Constitution, we held that violation of the Contracts Clause does not give rise to a § 1983 cause of action. *Carter v. Greenhow*, 114 U.S. 317 (1885). As is true of the Commerce Clause, the Court held that the Contracts Clause can be said to secure individual rights 'only indirectly and incidentally.' *Id*, at 322. The Court further explained that the only right secured by the Contracts Clause is the 'right to have a judicial determination, declaring the nullity of the attempt to impair [a State's] obligation.' *Ibid*.

"The Contracts Clause of Art. I, § 10, provides that '[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts.' At least such language would provide some support for an argument that the Contracts Clause prohibits States from 'doing what is inconsistent with civil liberty.' Cong. Globe 333 (Rep. Hoar). If the Contracts Clause, an express limitation upon States' ability to impair the contractual rights of citizens, does not secure rights within the meaning of § 1983, it assuredly demands a great leap for the majority to conclude that the Commerce Clause secures the rights of persons. The Commerce Clause is, if anything, a less obvious source of rights for purposes of § 1983, as its text only implies a limitation upon state power.

"At best, all that can be said is that the Commerce Clause grants Congress the power to regulate interstate commerce; from this grant of power, the Court has implied a limitation upon the power of a State to regulate interstate commerce; and in turn, courts provide a person injured by taxation that exceeds the limits of the Commerce Clause the 'right to have a judicial determination, declaring the

nullity of the attempt to' levy a discriminatory tax. *Carter, supra,* at 322. I find it ironic that *Carter* draws a distinction of nearly the same character as *Golden State*, between provisions which directly secure rights and those which do so 'only as an incident' of their purpose. *Golden State,* 493 U. S., at 109. Yet, the majority finds that the Commerce Clause was 'intended to benefit the putative plaintiff,' *Golden State, supra,* at 108, while *Carter* held that the Contracts Clause only provides incidental benefits." *Dennis,* 498 US 457-58 (Kennedy, J., dissenting) (bracketed material in original).

The majority in *Dennis* responded to the dissent with the following footnote:

"In arguing that the Commerce Clause does not secure any rights, privileges, or immunities within the meaning of § 1983, the dissent relies upon *Carter* * * *. This Court, however, has already given that decision a narrow reading, stating that the case 'held as a matter of pleading that the particular cause of action set up in the plaintiff's pleading was in contract and was not to redress deprivation of the 'right secured to him by that clause of the Constitution' [the contract clause], to which he had 'chosen not to resort.' * * *" 498 US at 451 n 9 (bracketed material in original).

That footnote suggests that the Court has elected to limit its holding in *Carter* by characterizing it as a pleading case involving a breach of contract claim, even though *Carter* previously had been cited for the proposition that a violation of the Contracts Clause cannot be remedied through section 1983. If section 1983 provides a remedy for a violation of the Commerce Cause, it follows that it should also provide a remedy for a violation of the Contracts Clause. However, in *United States v. Winstar Corp.*, 518 US 839, 116 S Ct 2432, 135 L Ed 2d 964 (1996), a case decided after *Dennis* that concerned whether the United States could be held liable for breaches of contractual promises to allow the respondents to count goodwill and capital credits toward certain regulatory requirements, a plurality of the Court relied on *Carter* for the proposition that specific performance can be a remedy for breach of contract. In a citation, the Court stated: "*See, e.g., Carter v. Greenhow,* 114 US 317, 322 (1885) (stating that 'the only right secured' by the Contract Clause is 'to have a judicial determination, declaring the nullity of the attempt to

impair [the contract's] obligation')[.]" *Winstar Corp.*, 518 US at 887 n 32 (first set of brackets in original). Thus, *Carter* has never been overruled.[5]

Plaintiffs assert that it is not necessary for us to decide the current efficacy of *Carter*, because the Oregon Supreme Court has already concluded in *Oregon State Police* that a violation of the Contracts Clause can be remedied through a section 1983 claim. In support of that argument before the trial court, plaintiffs pointed the court to an affidavit of their attorney that was submitted in plaintiffs' reply to defendant's objection to plaintiffs' motion for attorney fees. Attached to his affidavit was

> "a portion of the appellate brief filed by the attorney general in a series of consolidated cases which led to the Oregon Supreme Court's opinion in *Oregon State Police* * * *. Among the cases consolidated for appeal was the case referred to as *Tissue v. State of Oregon* and as reflected in the abstract of record filed with the brief, the sole jurisdictional basis for the court's action in *Tissue*, later affirmed by the Oregon Supreme Court, was under 42 USC § 1983."

My review of the attached portion of the appellate brief that is available for review in the record before us indicates that the plaintiffs in *Tissue* alleged eight claims for relief and that their federal constitutional claims were brought under section 1983. The federal constitutional claims included a claim that the section of Measure 8 that prohibited the use of accumulated unused sick leave to increase retirement benefits impaired their contract in violation of the Contracts Clause. Thus, plaintiffs contend that, because the summary judgment in *Tissue* was affirmed in *Oregon State Police*, the court implicitly held that a Contracts Clause violation can be remedied through a section 1983 claim.

I disagree with plaintiffs' argument. The opinion in *Oregon State Police* addressed "only plaintiffs' claim that Ballot Measure 8 violates the federal Contracts Clause, because that was the basis for summary judgment in each of [the consolidated] cases." 323 Or at 362 n 6. The court did not discuss

---

[5] At least one lower federal court has held that a violation of the Contracts Clause cannot be remedied through section 1983. *Andrews*, 931 F Supp at 1267.

the use of section 1983 as a remedy for a violation of the Contracts Clause, and there is no indication that that issue was raised to the court. To the extent that plaintiffs characterize section 1983 as a statute on which the Oregon Supreme Court's jurisdiction hinged, such that the court would have been required to address *sua sponte* the issue of whether a violation of the Contracts Clause can be remedied through section 1983, that argument is incorrect. Section 1983 is not a statute about a court's jurisdiction. *See* note 4 above. Consequently, I believe that the issue framed by parties and ignored by the majority is an issue of first impression for Oregon courts.

My analysis of this issue begins with an examination of plaintiffs' allegations in their section 1983 claim. Plaintiffs allege that: (1) They are employed by defendant. (2) Defendant was obligated, under the terms of their employment agreements, to pick up plaintiffs' retirement contributions. (3) On or after January 1, 1995, Measure 8 prohibited defendant from entering into employment agreements that would have the effect of relieving its employees from the obligation to contribute to their retirement accounts. (4) "On December 7, 1994[,] defendant passed ordinance #488-94 which deleted employer pick up and required plaintiffs to commence paying a 6% employee contribution to their pension plans. This ordinance was in response to Measure 8." (5) "Each plaintiff has been deprived of his or her rights under Article I[,] § 10[,] of the United States Constitution[,] under color of Measure 8 and is entitled to relief under 42 USC § 1983."

As is evident from plaintiffs' allegations, they claim that defendant deprived them of their contractual right to have defendant pay their retirement account contributions. The Contracts Clause forbids states from impairing the contractual obligations of its citizens, but it is only indirectly implicated by plaintiffs' complaint. As Chemerinsky explains, section 1983 creates "a legal entitlement to relief, against those who, acting pursuant to state government authority, violate federal law." Chemerinsky, *Federal Jurisdiction* § 8.1 at 422. Plaintiffs do not seek direct redress for a right secured by the constitution under their section 1983 claim. Rather, the gravamen of their section 1983 claim is a

claim for damages for defendant's breach of their employment agreements that occurred when defendant ceased picking up plaintiffs' pension contributions in the aftermath of Measure 8 and defendant's ordinance.

The nature of plaintiffs' claim causes it to align more squarely with *Carter* than with *Dennis*. Unlike in *Dennis,* where the plaintiff directly challenged an existing law that allegedly violated the Commerce Clause, the gravamen of plaintiffs' section 1983 claim is for damages for the breach of the employment contracts. I believe that difference to be significant in light of the holding in *Carter*. I do not believe that Congress intended section 1983 to provide a remedy for what is in substance a breach of contract claim. Even if the footnote in *Dennis* is understood to limit *Carter* to a case about a pleading and even if a claim for consequential damages arising out of an unlawful impairment of a contract under the color of state law could be brought under section 1983, I do not perceive plaintiffs to make that kind of claim. Rather, when properly construed, plaintiffs' complaint alleges facts that constitute only a breach of contract claim and not a section 1983 claim. Because plaintiffs' claim seeks a remedy for the breach of contract rights rather than a remedy for the deprivation of any right secured by the Contracts Clause, it follows that the trial court erred in holding that plaintiffs had made out a cognizable claim under section 1983. Consequently, the majority arrives at the right result but without confronting the legal significance of a key fact: defendant's enactment of an ordinance that had the effect of impairing its contracts with plaintiffs.

## II.  PLAINTIFFS' CROSS-APPEAL

According to the majority, plaintiffs have not changed their theory of recovery under their wage claim on appeal even though the theory pled in their complaint is for unpaid wages and their theory on appeal is that the deductions from plaintiffs' paychecks were improper in violation of ORS 652.610(3).[6] As I understand the majority opinion, it

---

[6] Plaintiffs argue that "[t]he County did not have the consent of the employees and upon the Oregon Supreme Court's finding that Ballot Measure 8 was void, no argument can be made that these deductions were authorized by law." In other words, if plaintiffs are successful in stating a claim under ORS 652.610(3), they

believes that a claim for the violation of ORS 652.610(3) is just another failure to pay wages when owed under ORS 652.110 through ORS 652.200. In my view, the majority improperly conflates the two statutory schemes when it concludes that "there is no such thing as a 'claim' under ORS 652.610(3)."

The issue is one of statutory interpretation, and the goal is to ascertain the legislature's intent. The first level of analysis is to examine the text and context of the applicable statutes. If that analysis clearly identifies the legislature's intent, further inquiry is unnecessary. ORS 652.110 to ORS 652.200 pertain to the payment and collection of unpaid wages generally. ORS 652.150 provides for a civil penalty for failure to pay wages on the termination of employment. As to attorney fees in an action for wages, ORS 652.200(2) provides:

> "In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the same became due and payable, the court shall upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting said action, unless it appears that the employee has willfully violated the contract of employment."

ORS 652.610 and ORS 652.615 are about deductions from an employee's salary. ORS 652.610(3) prohibits an employer from "withhold[ing], deduct[ing] or divert[ing] any portion of an employee's wages" unless specific circumstances exist. ORS 652.615 provides:

> "There is hereby created a private cause of action for a violation of ORS 652.610(3) for actual damages or $200, whichever is greater. In any such action the court may award to the prevailing party, in addition to costs and disbursements, reasonable attorney fees."

---

apparently believe it will be easier to obtain an award of attorney fees in contrast to demonstrating an unlawful failure to pay wages when owed arising out of the fact that the county withdrew its 6 percent contribution to satisfy the requirement of Ballot Measure 8 and, at the same time, gave plaintiffs a 5.7 percent raise.

If the legislature had intended that a claim alleging grounds under ORS 652.610(3) is merely another claim for relief under ORS 652.110 through ORS 652.200, for which penalties under ORS 652.150 and attorney fees under ORS 652.200 are available, the penalty and attorney fees provisions of ORS 652.615 would be superfluous. It is axiomatic that statutes are to be interpreted to give meaning to each statute. ORS 174.010. The fact that the legislature has created discrete penalty and attorney fee provisions for a violation of ORS 652.610(3) can mean only one thing: the legislature contemplated that there will be instances in which deductions are made by employers in violation of ORS 652.610(3), but will result in no wages owing when due. In those instances, the employee's sole remedy will be under ORS 652.610(3) and ORS 652.615.

The result of the two statutory schemes is that, depending on the facts alleged, there may be remedies available under both statutory schemes, but the statutes do not conflate as plaintiffs and the majority assert.[7] Further, the majority's reliance on our holding in *Schulstad v. Hudson Oil Company, Inc.*, 55 Or App 323, 637 P2d 1334 (1981), *rev den* 292 Or 825 (1982), is misplaced. In that case, the plaintiff brought a claim under ORS 652.140 after he was not paid his salary in accordance with an employment contract. The defendant counterclaimed for an amount that was missing in its receipts, relying on the contract with the plaintiff that contained express duties for the handling of the receipts. The trial court awarded the plaintiff lost wages, penalties under ORS 652.150 and attorney fees under ORS 652.200. It also awarded the defendant damages for the shortage and offset that amount against the award for the plaintiff. Both parties appealed, and we affirmed. On appeal, the defendant relied on *former* ORS 652.410, *repealed by* Oregon Laws 1977, chapter 618, section 2. That statute permitted employers to retain

---

[7] ORCP 16B provides:

"Every pleading shall consist of plain and concise statements in paragraphs consecutively numbered throughout the pleading with Arabic numerals, the contents of which shall be limited as far as practicable to a statement of a single set of circumstances, and a paragraph may be referred to by number in all succeeding pleadings. Each separate claim or defense shall be separately stated. Within each claim alternative theories of recovery shall be identified as separate counts."

a portion of an employee's compensation for the purpose of providing benefits such as health insurance. The defendant argued that *former* ORS 652.410 permitted it to deduct the shortage in receipts from the plaintiff's wages. We held that *former* "ORS 652.410 permitted no deduction other than deductions for the benefit of the employee." *Schulstad,* 55 Or App at 328. It is important to note that the events at issue in *Schulstad* occurred in 1977 before *former* ORS 652.410 was repealed and before the legislature adopted the private right of action that is now contained in ORS 652.615. Thus, *Schulstad* provides no guidance concerning the legislature's intent regarding ORS 652.610 and ORS 652.615 and their juxtaposition to ORS 652.110 through ORS 652.200.[8]

In this case, plaintiffs' wage claim includes the following allegations:

"8.

"Defendant county has declined to pay to plaintiffs the amounts improperly withheld from their pay for the period from December 1994 through October 1996.

"\* \* \* \* \*

"18.

"Defendant county has failed to properly pay the full amount of wages due each plaintiff on all paydays between December 1994 and October 1996.

"19.

"Plaintiffs are entitled to reasonable attorney fees and costs pursuant to ORS 652.200."

Plaintiffs pose this question in their brief: "Did the court err in rejecting plaintiffs' claim that [defendant] improperly deducted monies from their paychecks contrary to ORS 652.200?" However, in their summary of argument, plaintiffs state: "The trial court erred in dismissing plaintiffs' claim that the deductions from plaintiffs' paychecks are a violation of ORS 652.610(3)."[9]

---

[8] It is evident that the majority misses my point. *See* 169 Or App at 133 n 11.

[9] Plaintiffs also refer to ORS 652.610(3) in their assignment of error.

The factual allegations in plaintiffs' complaint that defendant has failed to pay wages when due and that defendant has failed to pay plaintiffs the amounts improperly withheld from their wages could suffice to state a claim under ORS 652.110 through ORS 652.200 because the term "wages" includes all earned compensation contracted to be paid by an employer, including pension benefits. *Kantor v. Boise Cascade Corp.*, 75 Or App 698, 708 P2d 356 (1985), *rev den* 300 Or 506 (1986). Also, the allegation that defendant has improperly withheld amounts as retirement contributions from their pay could state a claim under ORS 652.610(3) and ORS 652.615. However, when plaintiffs allege that they are entitled to attorney fees under ORS 652.200 without reference to ORS 652.610(3) or ORS 652.615, they have identified their claim as being under ORS 652.110 through ORS 652.200. Thus, defendant is correct that plaintiffs' argument on appeal concerning ORS 652.610(3) is not properly before this court in the absence of a pleading that relies on that statutory scheme.[10] In ruling on defendant's motions, the trial court was entitled to consider plaintiffs' wage claim as alleging a claim only under ORS 652.110 through ORS 652.200 when they expressly rely on ORS 652.200 as authority for an award of attorney fees.

For the reasons mentioned in the majority opinion, the trial court erred in granting summary judgment on plaintiffs' breach of contract claim. Because the alleged breaches consist of the failure to pay wages when due, it follows that the trial court erred also when it granted summary judgment on plaintiffs' wage claim. I would hold that plaintiffs' wage claim alleges a claim under ORS 652.110 through ORS 652.200 for the reasons stated above. It follows that the majority's result of reversing the summary judgment in favor of defendant on the wage claim is correct, despite its detour into an erroneous interpretation of ORS 652.610(3).

Accordingly, I concur in the majority's result, but not its reasoning.

---

[10] My review of the record does not reveal that plaintiffs ever moved to amend their complaint to add a claim under ORS 652.610(3) and ORS 652.615.