Argued and submitted July 7, affirmed December 10, 2003

Richard ALLEN,
James Anderson, John J. Atkins,
David A. Baleria, Jeanne Burrows,
Kenneth R. Curtis, Steven E. Daniels,
Sandra Depiero, Sandra L. Eccker,
Miltona L. Hendrix, Michel Holloran-Marshall,
Brad L. Hope, Richard C. Kennedy,
Robert O. Kennedy, Susan M. Luttes,
Ed Mayer, Ronald D. Parker,
Dewey P. Patten, Danny Lee Penland,
David Roughton, Jeanette M. Sieg,
Tenley Tanhoff, Edward C. Temple,
Shirley A. Tolbert, James L. Vansant,
and James N. Warren,
*Appellants,*

*v.*

COUNTY OF JACKSON COUNTY,
*Respondent.*

COUNTY OF JACKSON COUNTY,
*Third-Party Plaintiff,*

*v.*

STATE OF OREGON,
*Third-Party Defendant.*

97-009-L1; A115689

82 P3d 628

Michael J. Morris argued the cause for appellants. With him on the briefs were Gregory A. Hartman and Bennett, Hartman, Morris & Kaplan, LLP.

Timothy J. Sercombe argued the cause for respondent. With him on the brief were Carra L. Sahler and Preston Gates & Ellis LLP.

Before Haselton, Presiding Judge, and Wollheim and Brewer, Judges.

BREWER, J.

## BREWER, J.

█     This is the second appeal in an action brought by several employees of the Jackson County sheriff's office alleging claims against defendant Jackson County for breach of contract and wrongful deduction from wages. In the first appeal, we reversed a summary judgment and remanded. *Allen v. County of Jackson*, 169 Or App 116, 118, 7 P3d 739 (1996) (*Allen I*). Plaintiffs now appeal the judgment that the trial court entered on remand, assigning error to the trial court's denial of their motions for judgment on the pleadings and for a directed verdict on the wage claim.[1] We review the challenged decisions for errors of law. *GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 323 Or 116, 118, 914 P2d 682 (1996) (stating standard of review for denial of motion for directed verdict); *Withers v. State of Oregon*, 133 Or App 377, 382, 891 P2d 675, *rev den*, 321 Or 284 (1995) (stating standard of review for judgment on the pleadings). For the reasons that follow, we affirm.

The material facts are as follows: Some of defendant's employees, including some of the plaintiffs in this case, are participants in the Public Employees Retirement System (PERS). Other employees, including other plaintiffs, are participants in an alternative retirement plan that defendant provided to its employees. Sometime after 1979, defendant began paying its employees' retirement contributions. The practice began after the legislature enacted statutory language relating to PERS that, in substance, is the following part of ORS 238.205 (2001):

> "Notwithstanding any other provision of this chapter, and subject to the provisions of this section, a public employer participating in the system may agree, by a written employment policy or agreement in effect on or after July 1, 1979, to 'pick-up,' assume or pay the full amount of

---

[1] Three plaintiffs were promoted from the bargaining unit to supervisory positions after Measure 8 was enacted. Two plaintiffs were hired as supervisors from outside defendant's work force after Measure 8 was enacted. We refer to those five plaintiffs as the "post-Measure 8 plaintiffs." The remaining plaintiffs were supervisors before the adoption of Measure 8. We refer to them as the "pre-Measure 8 plaintiffs."

contributions to the fund required of all or less than all active members of the system employed by the employer."

In November 1994, the voters of the State of Oregon enacted Ballot Measure 8, which amended the Oregon Constitution to require that public employees contribute six percent of their compensation to their retirement accounts. Measure 8 also prohibited public employers from paying their employees' contributions.

In December 1994, defendant adopted an ordinance that provided that it would no longer pay plaintiffs' retirement contributions and gave plaintiffs a 5.7 percent pay increase. The ordinance provided, in part:

"WHEREAS, Measure 8 was adopted by the voters in the November 8, 1994, general election;

"WHEREAS, Measure 8 requires employees of Jackson County who are members of PERS or Jackson County's Standard Insurance Company retirement plan for the Sheriff's Office (the Standard Insurance Plan) to contribute to the plan six percent of their salary;

"WHEREAS, Measure 8 prohibits Jackson County from contracting or agreeing on or after January 1, 1995, to relieve its employees of their contribution obligation under Measure 8;

"WHEREAS, employee contributions to PERS or the Standard Insurance Plan would result in additional federal and state income tax liability to employees;

"WHEREAS, such additional tax liability would be avoided if Jackson County 'picks up' such employee contributions, as that term is used in Internal Revenue Code section 414(h)(2); and

"WHEREAS, by Board Order Number 416-94, dated September 29, 1994, the Board of Commissioners indicated an intent to increase salary ranges for non-union employees at the discretion of the county;

"Now, therefore,

"The Board of County Commissioners of Jackson County ORDERS that:

"1.   The salary ranges for all non-union county employees shall immediately be increased by 5.7%.

"2.   The County Administrator is authorized to raise the salaries of non-union employees by 5.7% according to the existing management compensation plan as that authority has been previously delegated to the Administrator by Jackson County Code section 216.09. Such raise shall be retroactive to November 28, 1994.

"3.   Effective for salary earned on or after November 28, 1994, the County will cease making its current six percent pick-up contributions under ORS 237.075 to PERS.

"* * * * *

"5.   Employees shall contribute six percent of their salary to PERS and the Standard Insurance Plan as follows:

"a.   Each employee covered by the OPEU agreement who is or becomes a member of PERS, and each non-union employee who is or becomes a member of the Standard Insurance Plan or PERS, shall contribute six percent of the employee's salary to such retirement plan, effective for salary earned on or after November 28, 1994, or such later date as the employee becomes a member of such retirement plan.

"b.   Each employee covered by the JCSEA agreement who is or becomes a member of the Standard Insurance Plan or PERS shall contribute six percent of the employee's salary to such retirement plan, effective for salary earned on or after the date established by agreement between Jackson County and JCSEA or such later date as the employee becomes a member of such retirement plan. Such agreements may treat sworn and unsworn employees differently, including the establishment of different effective dates for sworn and unsworn employees.

"6.   Such contributions, although designated as employee contributions, will be paid by Jackson County to such retirement plans in lieu of such contributions by the employees. Employees do not have the option of choosing to receive the contributed amounts directly and paying the

employee contribution directly instead of having the contributed amounts paid by Jackson County to such retirement plans. Such contributions are deemed to be 'picked up' for purposes of Internal Revenue Code section 414(h)(2) ('pick-up contributions'). This section 6 is effective for salary earned on or after November 28, 1994, except that for non-union employees who are members of the Standard Insurance Plan, it is effective for salary earned on or after December 12, 1994.

"7. Employees' reported compensation on the W-2 form for tax purposes will be reduced by the amount of such pick-up contributions.

"8. Such pick-up contributions will be made on a salary reduction basis, so that each employee's salary remaining after the pick-up contribution will be as reduced by the amount of the pick-up contribution."

In 1996, the Supreme Court declared Measure 8 unconstitutional as an impairment of contract in violation of Article I, section 10, of the United States Constitution. *Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 918 P2d 765 (1996).

Plaintiffs sought to recover the amounts that defendant had deducted from their wages for retirement contributions between December 1994 and October 1996. Their complaint alleged three claims: (1) a claim under 42 USC section 1983 based on an impairment of contract theory; (2) a claim for breach of contract; and (3) a statutory wage claim under ORS chapter 652. In the breach of contract claim, plaintiffs alleged, in part, that the "county breached plaintiffs' unilateral pension contract by improperly deleting the pick up of employee contributions for the period between December 1994 and October 1996." In the wage claim, plaintiffs alleged, in part, that the county failed "to properly pay the full amount of wages due each plaintiff." The prayer of plaintiffs' complaint sought the same amount of damages for both claims and did not distinguish between the measure of damages for each claim. In their original complaint, plaintiffs sought attorney fees only on their wage claim pursuant to ORS 652.200(2).[2]

---

[2] ORS 652.200(2) provides:

Plaintiffs moved for summary judgment on all of their claims. Defendant then moved (1) to dismiss the section 1983 claim pursuant to ORCP 21 A(8); (2) for summary judgment against the five post-Measure 8 plaintiffs on the breach of contract claim; (3) for partial summary judgment on its affirmative defense of mitigation that would limit the remaining plaintiffs' damages to the difference between the 6 percent pension pick-up that did not occur and the 5.7 percent pay increase that they received; and (4) for summary judgment on plaintiffs' wage claim.

The trial court granted defendant's motion for summary judgment on the wage claim and denied defendant's remaining motions. The court also granted plaintiffs' motion for summary judgment on the section 1983 and breach of contract claims as to all plaintiffs. Defendant appealed from the grant of summary judgment on plaintiffs' motions, and plaintiffs cross-appealed from the grant of defendant's summary judgment motion on the wage claim.

In *Allen I*, we held that defendant's actions did not constitute an impairment of contract for purposes of section 1983 and that there were genuine issues of material fact concerning whether defendant had breached its contracts with the post-Measure 8 plaintiffs and the amount of damages for its breaches of contract with the pre-Measure 8 plaintiffs. With respect to the wage claim, we said:

> "On cross-appeal, the question presented, according to plaintiffs' brief, is: 'Did the court err in rejecting plaintiffs' claim that [defendant] improperly deducted monies from their paychecks contrary to ORS 652.200?' In their summary of argument, plaintiffs state: 'The trial court erred in dismissing plaintiffs' claim that the deductions from plaintiffs' paychecks are a violation of ORS 652.610(3).' In their assignment of error, they state: 'The court erred in granting

---

"In any action for the collection of wages, if it is shown that the wages were not paid for a period of 48 hours, excluding Saturdays, Sundays and holidays, after the same became due and payable, the court shall, upon entering judgment for the plaintiff, include in such judgment, in addition to the costs and disbursements otherwise prescribed by statute, a reasonable sum for attorney fees at trial and on appeal for prosecuting said action, unless it appears that the employee has willfully violated the contract of employment or unless the court finds that the plaintiff's attorney unreasonably failed to give written notice of the wage claim to the employer before filing the action."

defendant's motion to dismiss plaintiffs' claim that [defendant] violated ORS 652.610(3) in improperly making withholding from plaintiffs' salary.' Defendant counters that the theory pled in plaintiffs' complaint was that defendant was entitled to attorney fees under ORS 652.200 because defendant had failed to pay the full amount of wages due to each plaintiff but that the theory advanced by plaintiffs on appeal is a different theory based on ORS 652.610(3). Defendant argues that plaintiffs should not be permitted to change the theory underlying their claim on appeal. We do not see the complete change of theory that defendant perceives. Rather, the fundamental basis of plaintiffs' claims was the same at trial and on appeal; it is also correct.

"ORS 652.200(2) authorizes an award of attorney fees in any action for unpaid wages under ORS 652.110 *et seq*. ORS 652.610(3) prohibits an employer from 'withhold[ing], deduct[ing] or divert[ing] any portion of an employee's wages' unless specific circumstances, which are not present in this case, exist. ORS 652.615 provides for 'a private cause of action for a violation of ORS 652.610(3) for actual damages or $200, whichever is greater[,]' and also allows the court to award reasonable attorney fees.

"Defendant misconceives the nature of a claim for deductions that violate ORS 652.610. Plaintiffs allege that defendants improperly withheld the six percent deduction from plaintiffs' wages and that defendant, thus, failed to pay all wages due to plaintiffs. That is sufficient to state a claim that defendant improperly withheld, deducted or diverted retirement account contributions from plaintiffs' wages contrary to ORS 652.610(3). That statute describes certain permissible deductions from an employee's wages and makes all other deductions impermissible. *Thus, an employer who makes a deduction that ORS 652.610(3) prohibits has, as a matter of law, failed to pay wages in the amount of the deduction. The employee may recover those unpaid amounts by a claim for unpaid wages*, and may recover attorney fees under ORS 652.200(2) if the employee prevails. The separate claim under ORS 652.615 is irrelevant to that right.

"That is precisely how we treated the predecessor statute, *former* ORS 652.410, in *Schulstad v. Hudson Oil Co.*, 55 Or App 323, 637 P2d 1334 (1981), *rev den* 292 Or 825 (1982). In *Schulstad*, we held that the defendant could not legally deduct alleged shortages from the plaintiff's wages.

Based on that conclusion, we affirmed the trial court's judgment awarding the plaintiff unpaid wages, penalty wages under ORS 652.150, and attorney fees under ORS 652.200(2). When the legislature adopted ORS 652.610(3) in 1977, it repealed *former* ORS 652.410 in the same act. Or Laws 1977, ch 618, §§ 1, 2. The change gave greater detail to the former deductions statute, but there is no reason to think that the legislature intended the wage payment statutes to operate in any different fashion: an illegal deduction leads to a claim for unpaid wages. Plaintiffs' arguments in this case are consistent with the law as we described it in *Schulstad*.

"In contrast, ORS 652.615 creates a separate claim for a violation of ORS 652.610(3). The legislature created that claim in 1980, three years *after* it adopted ORS 652.610(3) in 1977. Before the creation of what is now ORS 652.615, the way to recover an illegal deduction was to file a normal wage claim. Nothing in the legislature's action in creating a new, separate claim suggests that it intended to abolish the existing remedy; rather, the legislature added a new remedy to the existing one. Among other things, the separate claim includes a minimum damage amount, which is not available as part of a regular wage claim. Or Laws 1980, Spec Sess, ch 1, § 2 (creating claim as ORS 652.610(5)); Or Laws 1981, ch 594, § 7 (moving claim from ORS 652.610(5) to separate section, now ORS 652.615).

"In short, there is no such thing as a 'claim' under ORS 652.610(3). Rather, when an employer deducts amounts that are illegal under that statute, the employee may file one or both of two different kinds of claims: (1) a regular wage claim under ORS 652.120 (requiring payment of all wages at regular paydays) or ORS 652.140 (concerning payment of wages at termination of employment); or (2) a specific claim for illegal deductions under ORS 652.615, which includes the minimum damage amount and a separate, possibly easier, right to attorney fees. In this case, plaintiffs have adequately pled a claim of the first kind, and that claim includes with it the right to attorney fees under ORS 652.200(2) if they are successful. The trial court erred in dismissing the wage claim."

*Allen I*, 169 Or App at 131-34 (bracketed material in original; footnotes omitted; first emphasis added; second emphasis in original).

In sum, at issue in *Allen I* was whether the trial court properly dismissed the wage claim. We concluded that plaintiffs had adequately pleaded a claim, and we reversed and remanded the judgment dismissing the wage claim. Our appellate judgment provides, in part, that "on appeal, judgment on claims for breach of contract and violation of 42 USC § 1983 reversed and remanded; on cross-appeal, judgment on wage claim reversed and remanded; otherwise affirmed."

On remand, plaintiffs amended their complaint to seek attorney fees on their wage claim pursuant to both ORS 652.200 and ORS 652.615.[3] The breach of contract claim was tried to a jury, and the wage claim was tried to the court.[4] Defendant admitted that it had not paid the pre-Measure 8 plaintiffs the entire amount of compensation owed to them and that those plaintiffs were entitled to some recovery for breach of contract and on the wage claim. The substance of the dispute was whether, as plaintiffs contended, defendant was obligated to pay each plaintiff an additional six percent of compensation. Plaintiffs' sole witness was Robert Kennedy, the sheriff of Jackson County. Kennedy testified concerning his understanding of the purpose of the ordinance, based on descriptions given by the county administrator in manager meetings held in the fall of 1994. Kennedy described market surveys conducted by the county, which established that manager compensation was below market standards by 5.7 percent.

Defendant countered that, although the ordinance reduced plaintiffs' total compensation by .3 percent, it was intended to maintain, to the extent possible, the same total level of compensation as existed before Measure 8 was enacted. Then-County Administrator Burke Raymond testified on behalf of defendant as follows:

"[T]here was a lot of concern about a provision of Measure 8 which said that if any government attempted to nullify the

---

[3] ORS 652.615 provides:

"There is hereby created a private cause of action for a violation of ORS 652.610(3) for actual damages or $200, whichever is greater. In any such action the court may award to the prevailing party, in addition to costs and disbursements, reasonable attorney fees."

[4] Plaintiffs abandoned their section 1983 claim on remand.

results of Measure 8 by granting increases to employees that they would—they could be subject to suit by the—any taxpayer who chose to sue them.

"So there was a lot of concern about the exposure of elected officials to being sued as a result of trying to make some compensation offset for their employees. There was a 30-day window before the measure became effective, and—and the legal advice that we were getting was that actions could be taken by * * * in our case the County Commission, during that 30-day period and would not be * * * subject to suit, but it would certainly be open to criticism because lots of voters would—would be angry that—that people were trying to throttle the will of the people and of the election.

"We knew we were 5.7 percent behind in—in management salaries, because we had the surveys to show it. And we felt that this—this gave us some kind of a shield, some protection to the Commissioners that they could grant them a 5.7 percent increase because we were behind.

"Now, how could they grant it at one point and couldn't grant it at another point? Well, the reason that they could is because once the employees started paying their own PERS, six percent was going to be coming out of their salary and this was going to create some pot of money that wasn't there before. And so that would be—make it possible for the County to grant a 5.7 percent increase.

"So we took that to the Board. The—the committee made the recommendation to me that that's what we do, and I certainly agreed with it and we took it to the Board. And the Board took—decided to do it, and then I felt it was quite courageous of them to do it. They knew they were going to be criticized and they were criticized, but they felt it was important that they stand by their employees. * * *

"* * * * *

"* * * In the case of organized employees, it was relatively easy because there was a contractual right that the employees had to have their contract carried out, so most employers took the position, including the State of Oregon, that until such time as the contracts expired, the terms of the contract would be followed out. And the terms of most public employee contracts were that the employer would pay the full amount of—of PERS.

"It was in the case of the management employees where the difficulty arose, because there wasn't any contractual right. It was merely something that the employers had done for those employees, and so that was where the struggle was, how—how to figure out a way to—to compensate the management employees."

In short, defendant's position was that the effect of the ordinance generally was to continue, after the enactment of Measure 8, the pre-existing total compensation package for its management employees. Based on the ordinance, the retirement contribution remained the same, except that, pursuant to paragraph 6 of the 1994 ordinance, the payment was made by the employer on behalf of the employees.

Plaintiffs moved for judgment on the pleadings and a directed verdict on the wage claim on the ground that, irrespective of the jury's verdict on the breach of contract claim, they were entitled to judgment as a matter of law on the wage claim in the full amount of six percent that had been deducted from their salaries under the ordinance. The trial court denied the motions. The parties stipulated that the court could enter judgment for plaintiffs on the wage claim in the amount that the jury awarded on the breach of contract claim. The breach of contract claim was submitted to the jury on a special verdict form. The jury returned a verdict against defendant and in favor of the pre-Measure 8 plaintiffs. It found that those plaintiffs were damaged "in an amount equal to 0.3% of their compensation from January 1995 to October 1996." The jury returned verdicts against the post-Measure 8 plaintiffs and in favor of defendant. The trial court entered a judgment, awarding the pre- and post-Measure 8 plaintiffs the same relief on their wage claim as the jury had awarded them on their breach of contract claim.

On appeal, plaintiffs assert that defendant violated ORS 652.610(3) when it deducted six percent from plaintiffs' wages for retirement contributions and that, as a matter of law, plaintiffs are entitled to recover the full amount of the deductions.[5] As pertinent here, ORS 652.610(3) provides:

---

[5] Because the pre- and post-Measure 8 plaintiffs do not make separate arguments regarding their respective entitlements to relief, the differences between those designations do not ultimately affect the outcome on appeal.

"No employer may withhold, deduct or divert any portion of an employee's wages unless:

"(a) The employer is required to do so by law;

"(b) The deductions are authorized in writing by the employee, are for the employee's benefit, and are recorded in the employer's books;

"(c) The employee has voluntarily signed an authorization for a deduction for any other item, provided that the ultimate recipient of the money withheld is not the employer, and that such deduction is recorded in the employer's books;

"(d) The deduction is authorized by a collective bargaining agreement to which the employer is a party; or

"(e) The deduction is made from the payment of wages upon termination of employment and is authorized pursuant to a written agreement between the employee and employer for the repayment of a loan made to the employee by the employer * * *."

Plaintiffs assert that the employer's retirement contribution is part of their "wages" for the purpose of ORS 652.610(3). Plaintiffs reason that, by admitting that it had failed to pay each plaintiff the full amount of wages owed, defendant in effect conceded that none of the exceptions contained in the statute was applicable. Plaintiffs argue that the purpose of the ordinance is immaterial to their wage claim. As plaintiffs see it, "[u]nlike the breach of contract claim, the wage claim is not for common law 'damages' but is a statutory claim for the amount of unpaid wages." Accordingly, plaintiffs contend that defendant owes them the full six percent deducted from their wages for retirement contributions.

Plaintiffs argue that our decision in *Allen I* compels the result they seek. They rely on our statement in *Allen I* that "an employer who makes a deduction that ORS 652.610(3) prohibits has, as a matter of law, failed to pay wages in the amount of the deduction. The employee may recover those unpaid amounts by a claim for unpaid wages[.]" *Allen I*, 169 Or App at 132. Plaintiffs also rely on our statement that

"[d]efendant's argument that the case is not about the payment of salaries but, rather, is about the payment of pensions also misses the mark. The money that defendant deducted came from plaintiffs' current salaries; whatever the ultimate disposition of that money, if the deduction was not one that ORS 652.610 authorizes, it constituted a failure to pay wages."

*Allen I*, 169 Or App at 132 n 9.

Defendant disagrees with plaintiffs' reading of the statute and their understanding of our decision in *Allen I*. According to defendant, the sum total of plaintiffs' compensation, including their retirement contributions, constitutes their wages within the meaning of ORS 652.610(3). Except for the .3 percent differential, defendant argues, the same total amount of wages existed before and after the ordinance was adopted. Therefore, defendant asserts, plaintiffs' recovery on the wage claim was properly limited to .3 percent of that total amount. With respect to the scope of our decision in *Allen I*, defendant contends that we did not reach the issue presently in dispute.

We begin our analysis with the limited proposition on which the parties agree, namely, that the term "wages," for purposes of ORS 652.610(3), comprises the total pecuniary compensation owed to an employee for services. That proposition is correct. ORS 652.610 must be read in context with ORS 652.120 and ORS 652.200(2).[6] *See Allen I*, 169 Or App at 134. For purposes of ORS 652.120, "wages" are " 'compensation' for services provided by an employee to his employer." *Walker v. American Optical Corp.*, 265 Or 327,

[6] ORS 652.120 provides:

"(1) Every employer shall establish and maintain a regular payday, at which date all employees shall be paid the wages due and owing to them.

"(2) Payday shall not extend beyond a period of 35 days from the time that such employees entered upon their work, or from the date of the last regular payday.

"(3) This section does not prevent the employer from establishing and maintaining paydays at more frequent intervals.

"(4) This section does not prevent any employer from entering into a written agreement, prior to the rendering of any services, and mutually satisfactory with the employer's employees, as to the payment of wages at a future date."

333, 509 P2d 439 (1973). Similarly, for purposes of ORS 652.200, "wages" means "any compensation for an employe[e]'s services." *Kantor v. Boise Cascade Corp.*, 75 Or App 698, 709, 708 P2d 356 (1985), *rev den*, 300 Or 506 (1986). For purposes of those statutes, "wages" include retirement benefits. *Id.* at 711. It follows that "wages," for purposes of ORS 652.610(3), broadly refers to all parts of an employee's compensation, including retirement benefits.

Defendant argues that, because plaintiffs' wages are their total compensation, including retirement benefits, its shift from a pick-up to a deduction of the contribution from plaintiffs' salary is not a withholding, deduction, or diversion from plaintiffs' wages within the meaning of ORS 652.610(3). Defendants further argue that, because the jury awarded plaintiffs only .3 percent of their total compensation on the breach of contract claim, that award also fixed plaintiffs' damages on their wage claim. Plaintiffs respond that defendant's argument ignores the fact that "defendant increased plaintiffs' salaries by 5.7%" and "pretend[s] that the County added a pension contribution to wages before deducting it from wages." According to plaintiffs, "once the salaries were increased they became part of plaintiffs' entitlement to compensation and no part of them could be withheld without authorization."

Defendant's first argument is superficially appealing but, ultimately, unpersuasive. As discussed, "wages," for purposes of ORS 652.610(3), include both salary and retirement contributions. According to defendant, because plaintiffs retain their interests in all of their wages, including the retirement contributions, those contributions were not withheld, deducted, or diverted from wages. In essence, defendant argues, a shift in the form in which wages are paid does not violate ORS 652.610(3), provided that the "wages" are paid for the benefit of the employee. The difficulty with that argument is that "deductions"—even those made for an employee's benefit—are unlawful unless authorized in writing by the employee. ORS 652.610(3)(b). If defendant's construction of the statute were correct, ORS 652.610(3)(b) would be meaningless, because there would be no need for an exception with respect to deductions for an employee's benefit. *See* ORS 174.010 (providing that, "[i]n the construction of

a statute, * * * where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"). We therefore conclude that defendant improperly deducted the retirement contributions from plaintiffs' wages.

Defendant's second argument, however, is more compelling and requires that we consider the implications of the jury's verdict on the breach of contract claim. The jury found that pre-Measure 8 plaintiffs were entitled to damages for breach of contract in the amount of .3 percent of their total wages. Implicit in that determination is the following: (1) the 5.7 percent salary increase effected by the ordinance was a substitute for the lost pension contributions resulting from Measure 8, and (2) defendant's contractual obligation to the pre-Measure 8 plaintiffs consisted of paying their pre-Measure 8 salaries plus a six percent pension contribution. Accordingly, the jury's verdict indicates that those plaintiffs suffered a loss because defendant did not pay .3 percent of the wages that it owed those plaintiffs. In other words, the pre-Measure 8 plaintiffs suffered actual damages in the amount of .3 percent.

Based on the facts found by the jury, plaintiffs are not entitled to greater damages on their wage claim than the damages that they recovered on their breach of contract claim.[7] As discussed in *Allen I*, an employee may bring an action for unpaid wages under either ORS 652.120 or ORS 652.615. *Allen I*, 169 Or App at 134. In their amended complaint, plaintiffs sought recovery under both statutes.

■■ ORS 652.615 provides that, in an action for a violation of ORS 652.610(3), the plaintiff may recover "actual damages or $200, whichever is greater." "Actual damages" are "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses. —Also termed *compensatory damages*." *Black's Law Dictionary* 394 (7th ed 1999) (emphasis in original). In turn, "compensatory damages" are "[d]amages sufficient in

---

[7] As noted above, 191 Or App 197, the post-Measure 8 plaintiffs did not recover on their breach of contract or wage claims. For that reason and because the post-Measure 8 plaintiffs make no separate arguments on appeal, our discussion focuses on the pre-Measure 8 plaintiffs.

amount to indemnify the injured person for the loss suffered." *Id.* Here, although defendant improperly deducted 6 percent from the pre-Measure 8 plaintiffs' wages, the jury's verdict indicates that those plaintiffs suffered actual damages in the amount of .3 percent of their wages.

Alternatively, ORS 652.120 requires that the employer pay its employees "the wages due and owing to them." In their complaint, plaintiffs alleged that defendant did not pay them the full amount of wages that were due and sought the same amount of damages for the breach of contract claim and the wage claim. They did not distinguish between the measure of damages for each of those claims. In other words, plaintiffs sought to recover only their unpaid wages. The jury determined that, with regard to the pre-Measure 8 plaintiffs, the 5.7 percent salary increase effected by the ordinance was a substitute for the lost pension contributions resulting from Measure 8. The jury also determined that the wages due and owing to the pre-Measure 8 plaintiffs were their pre-Measure 8 salaries and a six percent pension contribution. Consequently, even though defendant violated ORS 652.610(3) by improperly deducting 6 percent of those plaintiffs' wages, under the facts of this case, only .3 percent of the pre-Measure 8 plaintiffs' wages were not paid.

That conclusion brings us to the parties' arguments concerning the effect of our decision in *Allen I*. In that case, plaintiffs requested that we " 'reverse the trial court's finding on the question of whether there was a violation of ORS 652.610(3) and allow the trial court to award damages including attorney fees as appropriate.' " *Allen I*, 169 Or App at 130-31. We held:

> "[W]hen an employer deducts amounts that are illegal under [ORS 652.610(3)], the employee may file one or both of two different kinds of claims: (1) a regular wage claim under ORS 652.120 (requiring payment of all wages at regular paydays) or ORS 652.140 (concerning payment of wages at termination of employment); or (2) a specific claim for illegal deductions under ORS 652.615, which includes the minimum damage amount and a separate, possibly easier, right to attorney fees. In this case, plaintiffs have adequately pled a claim of the first kind, and that claim includes with it the right to attorney fees under ORS

652.200(2) if they are successful. The trial court erred in dismissing the wage claim."

*Allen I*, 169 Or App at 134.

■ It is important to note that, in disposing of the first appeal, we did not direct the entry of judgment for plaintiffs on their wage claim; we merely reversed the trial court's entry of summary judgment in favor of defendants and remanded that claim. *Id.* The only issue that we decided in *Allen I* was whether the trial court erred in dismissing plaintiffs' wage claim. In resolving that issue, we did not have to decide the amount of plaintiffs' recovery if they were successful. Thus, the following statement from *Allen I*, on which plaintiffs now rely, was *dictum*:

> "[A]n employer who makes a deduction that ORS 652.610(3) prohibits has, as a matter of law, failed to pay wages in the amount of the deduction. The employee may recover those unpaid amounts by a claim for unpaid wages, and may recover attorney fees under ORS 652.200(2) if the employee prevails."

*Allen I*, 169 Or App at 132. Consequently, we are not bound by that statement. *See Blanchard v. Kaiser Foundation Health Plan*, 136 Or App 466, 470, 901 P2d 943, *rev den*, 322 Or 362 (1995) (reasoning that the law of the case doctrine does not "apply to every statement about the law or the facts that the court happens to venture in the course of rendering its decisions" and that, where a statement is "entirely unnecessary to the disposition of the appeal and was *dictum*," we are not bound by the statement). Although that statement is applicable to the ordinary circumstance where the amount of a deduction coincides with the amount of the claimant's unpaid wages, it does not apply where, as here, such a coincidence does not exist.

The trial court did not err in denying plaintiffs' motions for judgment on the pleadings and for a directed verdict.

Affirmed.